

**IT IS ORDERED as set forth below:**

**Date: December 30, 2025**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| COLLECTIVE CONCEPTS LLC D/B/A COLL CONCEPTS, LLC, | CASE NO. 25-62743-PWB |
| Debtor. | CHAPTER 11 |
| COLLECTIVE CONCEPTS LLC, | |
| Movant, | |
| v. | |
| PENNYMAC LOAN SERVICES, LLC, | |
| Respondent. | CONTESTED MATTER |

<u>ORDER DENYING MOTION TO VACATE ORDER AS VOID</u>

Three bankruptcy cases filed by different debtors in the past thirteen months have prevented PennyMac Loan Services, LLC ("PennyMac") from foreclosing on real property at 7354 Watonga Way, Riverdale, GA 30296  (the Property"). The third bankruptcy case was filed pro se by Collective Concepts, LLC ("Collective"). After a hearing on December 11, 2025, the Court entered an order granting "in rem" relief to PennyMac pursuant to 11 U.S.C. § 362(d)(4) . [Doc. 23].

Collective requests that the Court vacate its Order granting in rem relief pursuant to FED. R. CIV. P. 60(b)(4), *made applicable by* FED. R. BANKR. P. 9024, on the theory it is void for four reasons:  (1) PennyMac is not a creditor of Collective and the property on which PennyMac holds a lien is not property of its estate; (2) Collective did not, as a matter of fact and law, engage in a scheme to delay, hinder, or defraud creditors; (3) the Court dismissed Collective's case before considering PennyMac's motion, thus removing the Court's authority to grant PennyMac's motion; and (4) the Court violated Collective's due process rights.  [Doc. 25].

The Court has thoroughly reviewed the record in this case and two previous bankruptcy cases filed by Rene Solomon, Collective's owner, the record of the hearing, and Collective's arguments. For the reasons stated herein, the Debtor's motion is denied.

2

## I.       Factual Background

Rene Solomon, individually, and Collective, a limited liability company that Mr. Solomon owns and operates, have filed a combination of three pro se bankruptcy cases in the past thirteen months.

Mr. Solomon filed pro se the first case, 24-61754-pwb, on November 4, 2024 (the "First Case").  The case started under chapter 7 and converted to chapter 13 on Mr. Solomon's request on December 19, 2024.  After a hearing on confirmation of the Debtor's chapter 13 plan, the Court dismissed the case on March 14, 2025 because the Debtor failed to fund his plan.  The Chapter 13 Trustee's final report shows that the Debtor made no plan payments during the pendency of the case.

Mr. Solomon filed his next bankruptcy case under chapter 13 on June 2, 2025 (the "Second Case"). PennyMac and others objected to confirmation of Mr. Solomon's chapter 13 plan, and Mr. Solomon filed several adversary proceedings raising legal challenges to creditors' claims, filed responses to objections to confirmation, and sought withdrawal of the reference to District Court, which denied withdrawal.  After a hearing at which the Court heard from Mr. Solomon and others, the Court denied confirmation and dismissed his case on August 25, 2025.  Again, the Chapter 13 Trustee's final report shows that Mr. Solomon made no chapter 13 plan payments during the pendency of the Second Case.

Two dismissed cases within such a short period of time triggers a drastic result. If Mr. Solomon were to refile any time before March 15, 2026, no stay would go into effect pursuant to 11 U.S.C. § 362(c)(4).  This is because Mr. Solomon is an individual

who had two previous cases pending within the past year that were dismissed. § 362(c)(4)(A)(i). The filing of a third case within a one year period places the burden on the debtor to seek the imposition of a stay by demonstrating that the filing of the case "is in good faith as to the creditors to be stayed." § 362(c)(4)(B).

Mr. Solomon did not file a third case. Instead, as the owner of Collective, he filed a chapter 11 petition on Collective's behalf on November 3, 2025, the day before a scheduled foreclosure sale of the Property. [1]  Notwithstanding the fact Collective is a limited liability company that cannot represent itself, it filed its petition without an attorney.

Collective listed two creditors, American Express and the Small Business Administration, in the petition.  It listed no ownership interest in the Property.  It did, however, state that it was a party to a lease of "office space and basement rental at [the address of the Property] used for business operations and vacation rental management." [Doc. 1 at 17, Schedule G]. Collective listed the lessor of the Property as Rene P. Solomon and the RP Solomon Living TR IRRV. *Id*. Collective also listed the Property as its mailing address. [Doc. 1 at 1].

In an email, Mr. Solomon advised PennyMac's law firm of the filing of Collective's petition and asserted that continuation of the scheduled foreclose sale of the Property would be a violation of the automatic stay.

---

[1] Mr. Solomon signed the petition as Collective Concepts' owner and delivered the petition for filing in person. [Doc. 1 at 4, 23].

Ten days after filing, Collective sought dismissal of its case.  Because § 1112(b) requires notice and a hearing on a motion to dismiss a chapter 11 case, the Court scheduled the motion for a hearing on December 11, 2025.

Shortly thereafter, PennyMac filed its Motion for In Rem Relief from the Automatic Stay pursuant to § 362(d)(4) [Doc. 18, the "In Rem Motion"].  PennyMac contends that the three cases in the past year – two by Mr. Solomon and one by Collective – constitute a scheme to "delay, hinder, or defraud" creditors that warrants a bar to the imposition of an automatic stay in any later bankruptcy case of any entity claiming an interest in the Property.

On December 11, 2025, the Court held a hearing on both motions at which Mr. Solomon, counsel for PennyMac, counsel for the Subchapter V Trustee, and counsel for the United States Trustee appeared.

In support of its In Rem Motion, at the hearing, PennyMac's counsel explained that, notwithstanding the fact that PennyMac is not a creditor of Collective, Mr. Solomon emailed her law firm to notify it of Collective's bankruptcy filing in an attempt to stop the November 4 foreclosure sale. The email, attached as Exhibit F to the In Rem Motion, reads:

5

This message serves as **formal notice** that **Collective Concepts LLC**, the business holding **beneficial interest** in the property located at **7354 Watonga Way**, has filed a **Chapter 11 bankruptcy** in the U.S. Bankruptcy Court for the Northern District of Georgia, **Case No. 25-62743**. The filed petition is attached.

Under **11 U.S.C. § 362(a)**, the **automatic stay is now in full effect**. Any action to proceed with, advertise, or call the scheduled foreclosure sale would constitute a **willful violation of federal law** and subject all responsible parties to sanctions, actual damages, and attorney's fees under **§ 362(k)**.

Demand is hereby made for:

1. **Immediate cancellation** of the foreclosure sale scheduled for November 4, 2025.
2. **Written confirmation that the sale has been withdrawn from the county's call list and that all related activity has ceased.**

Please confirm **receipt of this notice** and provide written confirmation of compliance today.

Rene P. Solomon
for Collective Concepts LLC (Beneficial Interest Holder)

646-294-3455

**Attachment:** Voluntary Petition – Bankruptcy Case No. 25-62743 (NDGA)

In addition, PennyMac's attorney stated that a records search showed no ownership interest by Collective in the Property but that a Quitclaim Deed executed on March 26, 2025 by Rene Pierre Solomon and recorded in the Clayton, County Georgia land records on March 27, 2025, at Deed Book 13950 and Page 580, transferred the Property to RP Solomon Living TR IRRV and that Rene P. Solomon is the Trustee for RP Solomon Living TR IRRV. [In Rem Motion at 3-4 and Exh. C].

To further examine these allegations, the Court called Mr. Solomon to testify under oath. Mr. Solomon stated that he was "Rene Solomon, on behalf of Collective Concepts, LLC." Mr. Solomon testified that he recognized the email sent to PennyMac's law firm and acknowledged that he "individually sent it." Mr. Solomon testified that the RP Solomon Living TR IRRV is a trust created for estate planning purposes and that the Property was transferred to the trust. He declined to name the beneficiaries of the trust.

Based upon the undisputed record in the case, the history of filings, and Mr. Solomon's testimony, the Court at the hearing found that the multiple bankruptcy filings constituted a scheme to hinder or delay creditors and concluded that relief under § 362(d)(4) was appropriate.

On December 17, 2025 the Court entered an Order modifying the automatic stay to allow PennyMac to exercise its state law rights and granting in rem relief [the "In Rem Order," Doc. 23].[2]  The In Rem Order provides in pertinent part:

Any future bankruptcy filings by Debtor or others claiming an interest in the Property will not stay Movant from enforcing its state law rights and remedies with respect to the Property for one (1) year from the date of the hearing, December 11, 2025. Movant is authorized pursuant to 11 U.S.C. § 362(d)(4) to record a copy of this in rem Order in the Clayton County, Georgia land records in accordance with the applicable state law so that this Order shall be binding in any other case under this title purporting to affect the Property. A debtor in a subsequent case under this title may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing.

---

2 PennyMac's attorney submitted the proposed order on the In Rem Motion to the Chambers' email account and emailed a copy of it to the Debtor at the Court's instruction.  The Debtor made several objections to the content of the proposed order by email.  On December 18, the Court entered a Supplemental Order to specifically address the Debtor's comments. [Doc. 24].

## II. Legal Conclusions

Collective raises six arguments in support of its contention that the In Rem Order is void and should be vacated.

As an initial matter, the Court could simply dismiss the motion because Collective, a limited liability company, lacks the authority to file pleadings on behalf of itself. An artificial entity such as a limited liability company cannot represent itself in federal court and may only proceed with an attorney. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993); *Palazzo v. Gulf Oil Corporation*, 764 F.2d 1381, 1385 (11th Cir. 1985). Because Collective may not represent itself in federal court, it lacks the authority to file pro se motions in its case. Nevertheless, the Court will address its legal contentions.

### A. Whether the Court has authority to grant relief under § 362(d)(4) where PennyMac is not a creditor of Collective and the Property is not property of Collective's estate

In Grounds One and Two, Collective asserts that because PennyMac is not a creditor and does hold a claim against it and because the Property is not property of Collective's estate, relief under § 362(d)(4) is unavailable and, therefore, the Court lacked authority to grant such relief. Collective's reading of § 362(d)(4) is without merit.

The Court starts with the statute itself. Section 362(d) answers the question of who may bring a motion for relief from the automatic stay in the first phrase: "On request of a party in interest." The Bankruptcy Code does not define "party in interest" and the phrase appears in multiple places in the Bankruptcy Code for different reasons.

8

But because the Bankruptcy Code defines terms such as "debtor" and "creditor," it follows that "party in interest" is intended as a broader term that encompasses an entity whose interests are affected by a bankruptcy case and that has a stake in the outcome of the proceeding.

Here, PennyMac satisfies the "party in interest" requirement.  It holds a deed to secure debt on the Property that Collective occupies and Collective affirmatively contacted PennyMac to assert that the automatic stay in the case necessitated cancellation of the November 4, 2025 foreclosure sale.  PennyMac's interest in the Property is affected by Collective's case.

The Debtor next argues that because the Property is not property of its estate as defined in § 541 and made applicable in § 362(a), relief under § 362(d)(4) is not available.

This does not accurately describe § 362 or the facts of this case.  It is undisputed that Collective has no ownership interest in the Property. But Collective has asserted a "beneficial interest" in it deriving from its lease of the Property from its owner, Mr. Solomon or the Trust for which he is the Trustee.  Based on Collective's disclosure on the face of the petition and on Schedule G, it occupies the Property.

Contrary to Collective's assertion, the automatic stay operates as a stay not just against property of the estate.  Specifically, § 362(a)(3) operates as a stay against any act to obtain possession of property *from the estate*." § 362(a)(3) (emphasis added).  PennyMac's attempt to exercise its lien rights against non-debtor property occupied by a debtor could fall within § 362(a)(3).

Moreover, as noted above, Collective took the explicit position that the automatic stay applied against PennyMac on the day it filed bankruptcy and demanded that PennyMac stop its foreclosure sale. Collective cannot have its cake and eat it, too. It is nonsensical to read the statute to protect Collective with a stay but leave PennyMac without a remedy under § 362(d).

Collective further contends that because PennyMac is not a "creditor" and does not hold a "claim" against it, § 362(d)(4) does not apply. Collective's argument appears to stem from use of the terms "creditor" and "claim" in subsection (d)(4) of § 362. A closer analysis of this subsection shows that such a reading would undermine the purpose and meaning of §362(d)(4).

Section 362(d)(4) provides that upon request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay,

> with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> > (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property

shall accept any certified copy of an order described in this subsection for indexing and recording.

Collective reads "creditor" and "claim" in isolation and jumps to the conclusion that because PennyMac is neither with respect to Collective's case, it is not entitled to relief under § 362(d)(4). The better reading – the one consistent with the purpose of §362(d)(4) to curtail abusive filings – is to consider the phrase "a creditor whose claim is secured by an interest in real property" as a whole and not by its parts.

The Bankruptcy Abuse Prevention and Consumer Protection Act added § 362(d)(4) to codify the ability of an entity to obtain "in rem" relief when the filing of a bankruptcy petition was part of a scheme to delay, hinder or defraud creditors that involved either transferring ownership of real property or multiple bankruptcy filings affecting the real property.

The statutory language, "a creditor whose claim is secured by an interest in real property," must be read in the context of § 362(d)(4) as a whole. In that context, with respect to a stay of an act against the Property under § 362(a) (which Collective itself invoked), a party in interest, PennyMac, is a "creditor whose claim is secured by an interest in such real property" in the general sense of those terms. In other words, PennyMac has a claim against the Property. PennyMac may have no ability to collect on its note from Collective (a stranger to the contract), but it retains, both in and outside of a bankruptcy case, an enforceable lien against the Property securing its debts. To read § 362(d)(4) to require a "creditor" with a "claim" in a specific debtor's case ignores the explicit language regarding a scheme where one or more entities are working in

11

tandem, either through transfers or multiple filings, to prevent a party in interest with a security interest in real property from exercising its nonbankruptcy legal rights.

Of course that is what happened here. Mr. Solomon had two earlier dismissed cases, so a third filing would not result in an automatic stay. To avoid this result, Mr. Solomon filed a chapter 11 case for Collective, which he owns, and emailed PennyMac's law firm with the assertion that Collective's bankruptcy filing operated as a stay to stop the November 4, 2025 foreclosure sale.

To adopt Collective's theory – that because PennyMac was not its creditor but was still stopped by the automatic stay to proceed on property that was not property of Collective's estate – leads to an absurd result.

For these reasons, the Court concludes it had authority to grant relief under § 362(d)(4) even though PennyMac is not a creditor of the Debtor and the Property is not property of the Debtor's estate.

### B. Whether the Court properly concluded that the filing of Collective's petition was part of a scheme to delay, hinder or defraud creditors that involved multiple bankruptcy filings affecting the Property

In Grounds Three and Four, Collective contends that, as a matter of fact and law, it did not engage in a "scheme to delay, hinder, or defraud" and that no transfers of property or multiple bankruptcy filings occurred as § 362(d)(4) requires.

These arguments are also meritless.

Collective contends that § 362(d)(4) "applies only to filings or conduct attributable to the debtor itself" and that "filings by a non-debtor individual, affiliate, or principal are legally irrelevant." [Doc. 25 at 8]. Collective cites no authority for this

12

position.  The logical reason is that none exists because  the statute itself is explicitly

contrary to the position.  Section 362(d)(4) contains nothing that states only the debtor

must have committed the acts that trigger § 362(d)(4).  Indeed, it contemplates the

contrary – that the debtor (and potentially other parties) have engaged in a "scheme"

that involves transfers of property or multiple bankruptcy filings.

Collective further argues that as a matter of fact and law no transfer of interest

in property and no multiple filings exist.  This is nonsense.

Collective, without any foundation, contends that § 362(d)(4) "requires an

unauthorized transfer by the debtor of an interest in estate property" and that "transfers

by a non-debtor individual, or transfers occurring outside the bankruptcy case" cannot

satisfy the requirements of § 362(d)(4).  [Doc. 25 at 9].

Section 362(d)(4) contains no such requirement, and Collective's position is

inapposite to what the statute actually says.  Section 362(d)(4) contains no requirement

that the offending conduct be done explicitly by the debtor; instead it refers to whether

the "filing of the petition was part of a scheme" that involved transfers of property

(again, no requirement that it be done by the debtor) or multiple bankruptcy filings that

affect the real property (again, no requirement that the multiple filings be made only by

one party).

The facts here are clear.  After Mr. Solomon filed two cases dismissed within

the past twelve months, another filing by him individually before March 15, 2026,

would not result in an automatic stay.  It is undisputed that Mr. Solomon transferred an

interest in the Property to a trust for which he claims a beneficial interest and acts as

trustee.  On behalf of Collective, he filed the present case the day before a scheduled foreclosure sale and emailed PennyMac demanding that it cancel the foreclosure sale because Collective claimed a "beneficial interest" in the Property.

Over the course of thirteen months, these three bankruptcy filings by Mr. Solomon and Collective had the effect of delaying and hindering PennyMac's ability to exercise its  state law rights to foreclose on the Property.  This is a textbook case of a scheme to hinder or delay creditors by engaging in multiple bankruptcy filings involving the Property.

As a final matter, Collective contends that as a matter of fact that the email sent to PennyMac's law firm is not a "scheme."

A "scheme" is defined as "An artful plot or plan, usually to deceive others." BLACK'S LAW DICTIONARY (12th ed. 2024). In the context of § 362(d)(4), an "artful" plot or plan, is one "adopted for the nefarious purposes specified [§ 362(d)(4)]: to delay, hinder and defraud creditors through multiple bankruptcy filings or an improper transfer of property. A scheme is an intentional construct. It does not happen by misadventure or negligence. Thus, § 362(d)(4)(A) scheme is an intentional artful plot or plan to delay, hinder or defraud creditors." *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006).

Standing alone, without the context of previous bankruptcy filings by Mr. Solomon and at least two attempts at foreclosure by PennyMac on the Property in thirteen months, Collective's email might just be seen as a pro se debtor's "overreach." But § 362(d)(4) makes no distinction between conduct that occurs during the course of

14

a bankruptcy and conduct that occurs outside of it. Collective's email was clearly in furtherance of hindering or delaying PennyMac's foreclosure attempts because, notwithstanding the fact that Collective had no ownership interest in the Property, had no obligation on any debt to PennyMac, and had a simple possessory interest in the Property at best, it affirmatively demanded that PennyMac cancel the November 4 foreclosure sale.[3]

The Court has no difficulty in concluding that filing of Collective's petition was part of a scheme to delay, hinder or defraud creditors that involved multiple bankruptcy filings affecting the Property.

### C. Whether the Court's oral ruling dismissing of the case terminated jurisdiction to rule on PennyMac's § 362(d)(4) request for relief

Both Collective's motion to dismiss and PennyMac's motion for in rem relief under § 362(d)(4) came before the Court for hearing on December 11, 2025. Collective takes the position that because the Court made an oral ruling that it would dismiss the case before it ruled on the substance of PennyMac's motion, it lacked jurisdiction to take further action in the case.

The Court took up Collective's motion because it was the first filed and appeared first in the order of matters on the calendar. The Court explicitly stated on the record

---

[3] In the face of this demand on the day before a foreclosure sale what were PennyMac's alternatives? Multiple bankruptcy filings occur quite frequently, and some are entirely meritorious. Could this be one? Was Collective claiming an interest in the Property? Sometimes these determinations are difficult to make on such short notice on the one date of the month in Georgia when a nonjudicial foreclosure sale may take place. The consequences of acting in violation of the automatic stay can be substantial. It could have been at the risk of being in violation of the automatic stay which is a position no lender wants to be in.

that it would enter an order on PennyMac's motion for relief under § 362(d)(4) *before*

it would enter the dismissal order.  Nothing terminated the Court's ability to rule on

PennyMac's motion or enter orders in the order it determined appropriate.

### D. Whether the Court violated due process rights by granting in rem relief based upon the sworn testimony of Rene Solomon, a nondebtor

Collective asserts that a court "may not substitute the testimony of a nondebtor

individual for evidence of a debtor entity" or impute such testimony to a limited liability

company without express authorization or findings. [Doc. 25 at 16]. Collective

contends that because the Court failed to consider admissible evidence and failed to

make findings of fact and conclusions of law it violated Collective's due process rights.

As an initial matter, the Court notes that Collective cites no authority for its

position that the Court violated its due process rights.

Mr. Solomon's testimony was prompted by three things: (1) he owns and

operates Collective and, therefore, is in the best position to testify about it; (2) he filed

the failed chapter 13 cases that preceded Collective's case and are part of the scheme

to delay or hinder creditors; and (3) he sent the email to PennyMac's law firm as "Rene

P. Solomon for Collective Concepts, LLC (Beneficial Interest Holder)."

When called to testify by the Court, Mr. Solomon neither refused nor at any time

invoked his rights under the Fifth Amendment.

The notion that either Collective's or Solomon's due process rights were

somehow violated because Collective was not given notice that testimony would be

taken at a hearing is nonsense.  PennyMac scheduled its motion for a hearing on

16

December 11, 2025, and sent notice to Collective.  The notice of hearing reads, "Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so." [In Rem Motion at 1-2].

The In Rem Motion and notice provided Collective with notice of the relief requested and the opportunity to appear and be heard on it. Mr. Solomon appeared and testified. The Court is satisfied that the motion, the notice, and the hearing satisfied any concerns about due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").[4]

---

[4] To the extent Collective is arguing that due process was not satisfied because PennyMac failed to give notice to the actual property owner of its request for relief under § 362(d)(4), the Court rejects it.  Without deciding whether notice to the original or actual property owner is required by § 362(d)(4), the fact is that Solomon – who is the original Property owner and the Trustee of the alleged current property owner – had actual notice of the relief requested and appeared and participated at the December 11 hearing. The due process rights of future debtors are not violated so long as the In Rem Order is filed in the property records of Clayton County as it requires.  And a debtor in a subsequent case always has the right to seek relief from the In Rem Order upon a showing of a change in circumstances and good cause.

Where there are factual disputes, the Court hears testimony and evidence. In this case, the non-witness evidence consisted of the judicial records of previous bankruptcy cases filed by Mr. Solomon and the attachments to PennyMac's In Rem Motion regarding the Security Deed on the Property, the quitclaim deed, and the email sent by Solomon to PennyMac's counsel. At no point did Solomon or Collective dispute the accuracy or truth of these exhibits. As no disputes were raised it was unnecessary for the Court to formally mark or admit them as evidence.

As far as Solomon's testimony, the Court must note that when sworn in Solomon voluntarily identified himself as "Rene Solomon on behalf of Collective Concepts." This alone undermines Collective's assertion that the Court somehow substituted the testimony of a "nondebtor individual for evidence of a debtor entity."

But ultimately this argument is a red herring. Who but Mr. Solomon could testify as to Collective's intent in filing bankruptcy? As Collective's owner, the person who signed the petition on its behalf, and the person who hand-delivered the petition to the Clerk's office for filing, Mr. Solomon is  in the best if not only position to testify about the circumstances surrounding Collective's bankruptcy filing and actions taken by it. The Court did not "impute" Mr. Solomon's testimony to Collective; the Court heard Mr. Solomon's testimony on Collective's behalf.

Contrary to Collective's contention, the Court made findings of fact and conclusions of law on the record at the December 11 hearing. When a court makes an oral ruling, it is not required to recite the findings of fact and conclusions of law again in an order. FED.R. CIV. P. 52(a)(1) (In an action tried on the facts without a jury or

18

with an advisory jury, the court must find the facts specially and state its conclusions oof law separately.  The findings and conclusions may be stated on the record after the close of the evidence *or* may appear in an opinion or memorandum of decision filed by the court.") (emphasis added), *made applicable by* FED. R. BANKR. P. 7052 and 9014.

Based on the foregoing, the Court concludes that Collective fails to assert any ground for declaring the In Rem Order void or otherwise granting relief from it. Accordingly, it is

ORDERED that Collective's Motion to Vacate Void Order is denied.

**END OF ORDER**

**Distribution List**

Collective Concepts LLC, dba Coll Concepts, LLC
7354 Watonga Way
Riverdale, GA 30296

John T. Whaley, Subchapter V Trustee
P.O. Box 76362
Atlanta, GA 30358

United States Trustee
Office of the US Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Anjali Khosla, Esq.
Rubin Lublin, LLC
3145 Avalon Ridge Place
Suite 100
Peachtree Corners, GA 30071